### In re MIAMI RAILROAD STATION.

Railroad & Public Utilities Commission.

January 13, 1955.

J. Mark Wilcox, Miami, for Dade County Port Authority.

John R. Cicero, special public utilities counsel, Miami, for city of Miami.

John W. Martin, Trustee, John B. L'Engle, Jacksonville, and Robert H. Anderson, Miami, for Florida East Coast Railway Co.

William P. Simmons, Jr., Miami, and Wesley J. Ficht, general passenger agent, for Seaboard Air Line Railroad Co.

Roland A. Smith and Joel G. Wilcox, both of Miami, for Greater Miami Traffic Association.

Robert M. Morgan and Ray Miller, both of Miami, for Miami Chamber of Commerce.

Marco Loffredo, Miami, for Grapeland Heights Civic Association.

R. B. Gautier, Miami, appeared in his own behalf.

J. J. Sheppard, Miami, for Greater Miami Hotel Association.

Lewis Petteway, general counsel, appeared in behalf of the commission and the public, generally.

Chairman WILBUR C. KING and commissioners JERRY W. CARTER and RICHARD A. MACK participated in the hearings and disposition of this case.

BY THE COMMISSION.

### History of Proceeding

On November 15, 1920 a petition signed by 380 citizens of Miami was filed with the old Florida Railroad Commission by Miami's city attorney requesting that an order be entered requiring the Florida East Coast Ry. Co. (hereinafter referred to as "the

F.E.C.") to erect without further delay a new railroad passenger station in Miami adequate to meet the transportation requirements of the city. This citizens petition almost 34 years ago called attention to the fact that—"the present railroad station was built at a time when the population of Miami was 4,000 inhabitants; that since then the city's population has increased to over 29,000; that between the months of November and May the city's population increases to about 60,000 to 70,000; that the present station is hopelessly inadequate, and that a new station is immediately required."

During the processing of that first petition it developed that the city would not consent to the removal of the station building from its location, which was within the city's fire zone, nor would it at that time permit any additions to the building out of the same material used in the original structure. Because of the railroad's financial condition during the post World War I period the city apparently realized the futility of its efforts, and dropped its petition.

On November 1, 1937, the city filed a formal complaint with the Florida Railroad Commission against the receivers of the F. E. C. and the Seaboard Airline Railroad Co. (hereinafter referred to as "Seaboard") requesting that the commission, after due and proper hearing, enter an order requiring the railroads, *jointly,* to erect, operate and maintain a union passenger station within the city adequate to meet its needs and the needs of adjacent municipalities. A copy was served on the railroads and after various defensive pleadings had been disposed of the matter was set down for a public hearing in Miami on July 12, 1938.

On May 11, 1938 the city stipulated with the railroads that the hearing should be postponed. Supplemental pleadings were then filed by the railroads and on October 28, 1939 the city formally requested that the matter be set for public hearing on or after February 5, 1940. In response thereto the commission announced that it would hold a public hearing in the Dade County Courthouse on February 6, 1940.

This hearing was held as scheduled and voluminous testimony was taken by the commission. At the conclusion thereof the parties stipulated that further hearings should be held not later than April 20, 1940. The railroads and the city, however, later joined in requesting the commission to postpone further the remaining hearings. The commission set the matter down for further hearing to be commenced on July 30, 1940—but the railroads and city again joined in requesting that the hearings be postponed and that future hearings be held in Jacksonville.

Pursuant to that request the commission set the matter down for a hearing to be held on August 5, 1940 in Jacksonville. At the conclusion of this series of hearings the city requested that the matter be further postponed so that it might have time to prepare additional presentations on behalf of the city. The commission granted this request and the matter was held in abeyance pending advice from the city that it was ready to proceed. Nothing further was heard from the city for a number of years.

Finally on November 28, 1948 the city filed an amended complaint requesting that Seaboard be dismissed as a party defendant in these proceedings, that the cause proceed against the F. E. C. as the sole defendant, and that the F. E. C. be required to construct, operate and maintain adequate passenger station facilities within the city at a location to be designated by the commission. The Florida Railroad Commission requested the Interstate Commerce Commission (hereinafter referred to as "the I.C.C.") to participate in a joint hearing but the request was denied.

The Railroad & Public Utilities Commission then made numerous attempts to hold hearings on the city's amended complaint, but in each instance it was necessary to delay the matter because the city was not prepared to proceed with its case. Finally the commission on its own motion initiated an investigation of F. E. C.'s passenger station facilities in Miami and proceeded to hold hearings in that city commencing on July 12, 1949. When this hearing commenced the commission dismissed the city's amended complaint and proceeded with its own investigation. At this hearing the city and the F. E. C. recommended that the city approve a site at N. E. 20th Terrace in Miami along the present railroad right-of-way and west of N. E. 2nd Avenue as the best location for a new and modern passenger station.

This hearing was concluded the latter part of July 1949 and in October of that year the commission entered its formal order in which it found that the present station facilities are inadequate and failed to meet the reasonable requirements of public convenience and necessity, at the same time directing the trustees of the F. E. C. to relocate its station and build without unreasonable delay adequate station facilities at the N. E. 20th Terrace location. At the same hearing the trustees were directed forthwith to initiate proper and necessary proceedings in the federal court to secure such authority as might be necessary to enable them to comply with the commission's order requiring relocation of the facilities.

In December of that year the trustees initiated such proceedings in the federal court in Jacksonville, and the commission promptly intervened therein to secure the court's approval of the commission's order. Finally on July 23, 1953 the court recognized and approved our order requiring the trustees to build adequate passenger station facilities in Miami, subject to further approval in some respects by the I. C. C. The following week we called a formal conference in Miami with representatives of the city and Dade County for the purpose of formulating plans for filing necessary and appropriate proceedings with the I. C. C.

At this conference the board of county commissioners acting as the Dade County port authority (hereinafter referred to as "the port authority") announced that it would subsequently file a petition advocating the construction of a *union* railroad passenger station on a tract of land owned by the city east of LeJeune road between N. W. 14th Street and N. W. 20th Street—in lieu of the site theretofore advocated by the city (and approved by the commission in its previous orders). At that conference the city also presented a resolution requesting that a public hearing be held to consider the advisability of locating a union station between Comfort and Tamiami canals east of the International Airport.

The port authority later filed a formal petition advocating the erection of a union passenger terminal for use by Seaboard and the F. E. C. and requesting the commission to hold in abeyance its former order requiring the trustees of the F. E. C. to build a station at N. E. 20th Terrace. Thereafter the city filed a resolution asking us to hold a hearing as expeditiously as possible (but not earlier than September 15, 1954) to reconsider our former order and in lieu thereof to require that adequate facilities be built on city-owned property on LeJeune Road between Comfort and Tamiami canals.

On August 5, 1954 we issued formal notice calling a hearing for September 21, 1954 to hear such testimony and oral arguments as might be presented by intervening parties which would be helpful to the commission in determining—(1) Whether we should reconsider and vacate our order #1567 (entered October 27, 1949) requiring the trustees of the F. E. C. to build a station at N. E. 20th Terrace. We announced that in arriving at a decision on this question we would hear testimony on any location that might be advocated by anyone having an interest in the matter. (2) Whether we should approve the construction and operation by the port authority of a union station to be located on property owned by the city on LeJeune Road between Comfort and Tamiami canals. And

(3) if such a union terminal should be approved whether we should require Seaboard and the F. E. C. to use such station facilities jointly.

## Commission Jurisdiction

A mass of documentary evidence and several hundred pages of testimony were presented at the hearing in Miami on September 21, 22, and 23, 1954 by the port authority in support of its proposed construction and operation of a union station. Seaboard questioned our jurisdiction to order the respondent railroads to use the proposed union station, and while the F. E. C. filed no pleadings questioning our jurisdiction, nevertheless at the conclusion of its case the port authority's attorney announced that it was their understanding the F. E. C. trustee had stated that the F. E. C. would not, under any circumstances go into a union station at the location proposed by the port authority. He further stated that if we could not enforce an order requiring the railroads to use a union station (which the port authority proposed to build and operate) then further consideration of the matter would be futile in the absence of a voluntary agreement by the railroads to use the proposed facilities.

John W. Martin, sole trustee for the F. E. C., then testified that construction of a new station at the N. E. 20th Terrace location, as ordered by the commission in its order #1567 presented many insurmountable obstacles making it impossible to construct such station. He requested the commission to vacate order #1567 and in lieu thereof enter an order approving the construction and operation of a modern passenger station on the site of the railroad's Buena Vista freight yards which he proposed moving to Hialeah. He testified that the railroad already owned the necessary land at the Buena Vista site and that the new station could be built for approximately $2,400,000 which was within the amount already allowed by the I. C. C. in the F. E. C. relocation proceedings for the erection of a new station in Miami. On cross examination he was asked by the port authority attorney whether he would be willing to confer with the authority and the city commission concerning the proposed union station. He answered that he would always be willing to confer on this matter. He was then asked whether in his opinion it would be *worth while* to confer on a union station to be located at the proposed site and he answered— "I think you might as well try to move this hotel with a toothpick." Whereupon the port authority attorney stated—"We may as well forget the union terminal."

Under the facts of this case, the commission has no authority to require the respondent railroads to use union terminal station facilities. Miami is the end of the line for each of the respondent railroads and there is no interchange of passengers whose convenience and necessity would be served by both railroads using a union station.

### Findings

The F. E. C. trustee testified that in any event the railroad's freight yards would be moved from the Buena Vista site to Hialeah and that the construction of new freight yards there would require about 18 months. He stated that this work would be begun immediately and we have been advised it is already under way. He stated it would be impossible to begin construction of the new station at the Buena Vista site before the freight yards have been removed and that the construction of the new station would require another 18 months—so 36 months must necessarily transpire before the new station could be provided for Miami. In using the new terminal at the Buena Vista site trains would necessarily continue to cross 36th Street until such time as some separation of the grades at that location could be brought about—but the removal of the yards to Hialeah, the removal of the present passenger station from downtown Miami, and the operation of the new station at the Buena Vista site will make it possible for the city to open some 22 to 23 streets south of 36th street which now dead end at the F. E. C. tracks. At the conclusion of the hearings on September 23, 1954, the commission announced its findings and conclusions as follows—

"While under certain facts and circumstances this commission can require two railroads to use a union passenger station, the evidence in this case does not warrant such an order. The port authority's petition will therefore be dismissed.

"The evidence in this case shows that a passenger station at the Buena Vista yards of the F. E. C. will best serve the public convenience and necessity, and is more practical. That location offers the best opportunity for Miami to secure an adequate station in the shortest period of time. The evidence discloses that the cost of a station at this location will come within the amount already included in the reorganization plan of the F. E. C. by the I. C. C. The commission therefore amends its previous order so as to require the F. E. C. to build an adequate passenger station at its Buena Vista yards in lieu of the N. E. 20th Terrace location previously approved by the commission.

"The city of Miami has filed a resolution requesting a recess of 30 days in this proceeding. We do not believe any further delay in the matter is required.

"A formal amendment of our previous order will be entered."

*Order*

The port authority's petition is dismissed. The city's request for a further postponement is denied. Order #1567 requiring the trustees of the F. E. C. to build an adequate passenger station at N. E. 20th Terrace is amended so as to require John W. Martin, sole trustee thereof, to build an adequate passenger station at its Buena Vista yards in Miami, together with all necessary tracks for servicing it consistent with the findings herein. It is ordered that the trustee proceed with all reasonable diligence in making the Buena Vista site available for the construction thereon of an adequate passenger station, that he take such steps and initiate such proceedings as may be necessary to enable him to effectuate this order and that he cause to be prepared all necessary detailed plans and specifications for said construction, and that copies thereof be furnished to this commission for its consideration and approval.